UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DARRYL LAMONT GARDNER,

              Plaintiff,

v.

UNKNOWN PICOTTE et al.,

              Defendants.

_____/

Case No. 2:24-cv-192

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis* in this action. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Elkins, Gulder, and Corrigan. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment and due process claims against remaining Defendants remaining Defendants Picotte and Clark. Plaintiff's retaliation claims against Defendants Picotte and Clark remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.[2] The events

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=247292 (last visited Mar. 20, 2025).

about which he complains occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF staff: Corrections Officers Unknown Picotte, Unknown Elkins, and Unknown Gulder; Assistant Deputy Warden Unknown Clark; and Warden James Corrigan.

Plaintiff alleges that on June 30, 2024, at approximately 5:37 p.m., he informed Defendant Picotte that he would be filing a grievance on him for failing to conduct rounds every 30 minutes because Defendant Picotte was 12 minutes late. (ECF No. 1, PageID.3.) Plaintiff states that he explained to Defendant Picotte that he was taking a prescription drug called Terazosin with eight to ten 22-ounce cups of water per day in order to flush his kidney stones, and that he was under doctor's orders to urinate frequently throughout the day. (*Id.*) Plaintiff was on a top-lock sanction at this time and had to wait for staff permission to use the bathroom. (*Id.*)

Thereafter, Defendant Picotte was nearly sixteen minutes late, at which point Plaintiff also had to defecate. (*Id.*) Plaintiff asked Defendant Picotte for a grievance form, and Defendant Picotte refused and fabricated a class I misconduct on Plaintiff for threatening behavior. (*Id.*, PageID.3–4.) Plaintiff was then placed in segregations. (*Id.*)

Plaintiff states that he was found not guilty of the misconduct. (*Id.*, PageID.4.) Plaintiff then spoke to Defendant Clark and explained that he should be released from segregation, but Defendant Clark refused, saying that Defendant Picotte wanted Plaintiff in segregation, and he was going to keep Plaintiff there. (*Id.*) Plaintiff states that he was wrongfully held in segregation from June 30, 2024, until July 19, 2024. (*Id.*, PageID.7.)

Plaintiff states that he had prior misconduct tickets for substance abuse and dangerous contraband, but that they were not the type of tickets that were considered a threat to anyone's

safety or to the order and security of the prison. (*Id.*, PageID.5.) On July 9, 2024, Plaintiff was found guilty of the tickets and was given ten days in detention. (*Id.*)

Plaintiff alleges that Defendant Elkins, who was a co-worker and friend of Defendant Picotte, stole his JP-6 tablet, cord, adapter, and earbuds, as well as his personal fan, bowls, thermos/tumbler sets, nail clippers, and ink pens in retaliation for Plaintiff filing a grievance against Defendant Picotte. (*Id.*, PageID.6.) Plaintiff asserts that his tablet had a distinctive braided necklace attached that Plaintiff had made and that he made other such items and sold them to fellow prisoners. (*Id.*, PageID.6–7.) Plaintiff states that the necklace was displayed daily while he used his tablet and served as a marketing tool for selling his necklaces. (*Id.*)

On July 20, 2024, other inmates told Plaintiff that they had seen Defendant Elkins with his tablet and several bowls and cups. (*Id.*, PageID.7.) Plaintiff states that his tablet contained the last picture of his mom, who was in her casket. (*Id.*) Plaintiff states that he was also deprived of phone usage on Independence Day 2024, which kept him from listening to his father's and brother's celebration. (*Id.*, PageID.7–8.) Plaintiff alleges that he lost over $100 worth of store goods from his "prisoner run store," where he "barters store goods at a price of return of 1½." (*Id.*, PageID.8.)

Plaintiff states that he received a class II misconduct for the destruction/misuse of property and was placed on a 30-day phone restriction even though he "beat" the misconduct. (*Id.*) On August 2, 2024, Defendant Gulder threatened to write a disobeying a direct order misconduct on Plaintiff if he did not hang up the phone. (*Id.*) Plaintiff alleges that Defendant Gulder went on to write the misconduct as well as a notice of intent (NOI) for phone restriction, which resulted in Plaintiff's phone being deactivated from August 11, 2024, until September 10, 2024. (*Id.*, PageID.9.) Plaintiff attaches a copy of the misconduct hearing report to his complaint, which shows that he was found not guilty of the misconduct, although the attached copy of the hearing

report related to the NOI shows that Plaintiff was nonetheless subjected to a phone restriction. (ECF No. 1-1, PageID.32.)

Plaintiff claims that all of the Corrections Officers involved in this case work on second shift and are friends/associates. (ECF No. 1, PageID.9.) Plaintiff states that there was available space on July 8, 9, and 10 of 2024 to transfer Plaintiff from segregation to level 2, but that Defendant Clark refused to release Plaintiff out of solidarity to Defendant Picotte and that this resulted in Plaintiff being denied all contact with family. (*Id.*) Plaintiff also asserts that the deprivation of his phone for 30 days prevented him from having family order "securepackages" of food, stamped envelopes, and hygiene items. (*Id.*, PageID.10.) Plaintiff was also unable to call family to request money needed to replace his property. (*Id.*) Plaintiff further claims that he has heat-related illness and chronic respiratory illness and suffered a heat stroke on July 30, 2024, as a result of his fan being stolen by Defendant Elkins. (*Id.*) Plaintiff claims that Defendant Corrigan was aware of the misconduct of his subordinates because he received Plaintiff's step II grievances but took no corrective action. (*Id.*, PageID.11.)

Plaintiff asserts claims under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

6

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **Defendant Corrigan**

Plaintiff's sole claim against Defendant Corrigan is that he was aware of the misconduct of his subordinates because he received Plaintiff's step II grievances but took no corrective action. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior.

*Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Corrigan encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts at all about his conduct other than to say that he received Plaintiff's step II grievances. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Corrigan was personally involved in

8

the alleged misconduct of his subordinates. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's Section 1983 action against Defendant Corrigan is premised on nothing more than respondeat superior liability, he fails to state a claim against this Defendant.

### B.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Delay in Plaintiff's Access to the Bathroom

Plaintiff alleges that unit rounds are meant to be performed every thirty minutes, but on June 30, 2024, Defendant Picotte was repeatedly late, causing Plaintiff to suffer because he was under doctor's orders to take a prescription drug with eight to ten 22-ounce cups of water per day in order to flush his kidney stones and to urinate frequently throughout the day. (ECF No. 1, PageID.3.) Plaintiff states that after Defendant Picotte was late the first time, Plaintiff indicated that he intended to file a grievance. Defendant Picotte then responded by continuing to perform rounds late, at one point up to sixteen minutes late. (*Id.*)

"Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement

10

claim." *Id.* Although Plaintiff asserts that he had a medical condition which required him to urinate frequently, Plaintiff does not allege that he was under doctor's orders to urinate at specific intervals and that this order was ignored or violated. Moreover, although it may have caused substantial discomfort or embarrassment, Plaintiff fails to state that the delay of 16 minutes worsened his condition or otherwise caused him any physical injury. Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages related to Defendant Picotte's lateness in performing rounds because he does not allege a physical injury as a result of that conduct. *See* 42 U. S. C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). The Court concludes that Plaintiff's allegations regarding Defendant Picotte's lateness in performing rounds do not rise to the level of an Eighth Amendment violation.

### 2.    Segregation/Phone Restriction

Plaintiff claims that he was wrongfully held in segregation from June 30, 2024, until July 19, 2024. (ECF No. 1, PageID.7.) Plaintiff also asserts that he was subjected to an improper phone restriction for thirty days, which resulted in Plaintiff being denied all contact with family. (*Id.*, PageID.9.) Plaintiff also asserts that the deprivation of his phone for thirty days prevented him from having family order "securepackages" of food, stamped envelopes, and hygiene items. (*Id.*, PageID.10.) Plaintiff was also unable to call family to request money needed to replace his property. (*Id.*) In addition to the 30-day restriction, Plaintiff states that he was prevented from using the phone to call his family on Independence Day 2024. (*Id.*, PageID.7–8.)

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal quotations omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure

11

of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages related to his segregation and phone restriction because he does not allege that they resulted in a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. Therefore, Plaintiff's Eighth Amendment claims related to his segregation and phone restriction are properly dismissed.

### 3.    Stolen Personal Property Including Fan

Plaintiff alleges that Defendant Elkins stole a large amount of personal property including his personal fan, bowls, thermos/tumbler sets, and nail clippers. (ECF No. 1, PageID.6.) Plaintiff claims that he has heat related illness and chronic respiratory illness and suffered a heat stroke on July 30, 2024, as a result of his fan being stolen by Defendant Elkins. (*Id.*, PageID.10.) Plaintiff also states, "What am I supposed to drink water out of now?! What am I supposed to eat and or cook my food out of now?!" (*Id.*, PageID.12.)

12

As noted above, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Plaintiff appears to be claiming that the seizure of his kitchen utensils prevented him from cooking or eating in his cell. However, Plaintiff does not allege facts showing he was not able to eat in the communal prison eating area or to drink water using prison supplied cups/drinking containers. Therefore, because Plaintiff has not alleged that he was denied food or water by the seizure of his kitchen utensils, this claim does not implicate the Eighth Amendment.

With regard to the seizure of his fan, Plaintiff claims that he later suffered a heat stroke because he did not have his fan. However, Plaintiff does not allege facts showing that Defendant Elkins was aware of a high risk that Plaintiff would suffer a heat-related illness as a result of the seizure of his fan and acted with deliberate indifference to this risk. In order to violate the Eighth Amendment, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Therefore, Plaintiff's Eighth Amendment claim against Defendant Elkins is properly dismissed.

### C.    Due Process

#### 1.    Misconduct Tickets, Segregation, and Phone/Tablet Restriction

Plaintiff claims that he received two false misconduct tickets, was wrongfully held in segregation, and was improperly deprived of access to the phone. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v.*

*Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff states that he was found not guilty of the misconduct tickets written by Defendants Picotte and Gulder but was nonetheless subjected to confinement in segregation from June 30, 2024, until July 19, 2024, and a phone restriction from August 11, 2024, until September 10, 2024, during which he was not able to use his tablet because it had been taken by Defendant Elkins. (ECF No. 1, PageID.6–9.)

Plaintiff was not convicted of the misconducts and has not alleged a deprivation that will inevitably affect the duration of his sentence. Nor does Plaintiff allege facts showing that he suffered a "significant and atypical deprivation." Plaintiff states that he was placed in segregation for 19 days and put on phone restriction for 30 days. Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and

14

significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation for 19 days is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Thus, Plaintiff's confinement in segregation did not trigger a right to due process.

15

The same is true for the loss of phone and tablet privileges. *Wymes v. Laughton*, No. 4:21-CV-10700, 2021 WL 3207121, at *3 (E.D. Mich. July 29, 2021) ("Plaintiff does not have a liberty interest in phone privileges to which due process can attach."); *Uraz v. Ingham Cnty. Jail*, No. 1:19-CV-550, 2019 WL 4292394, at *6 (W.D. Mich. Sept. 11, 2019) ("[T]he 10-month limitation on phone privileges did not violate Plaintiff's right to procedural due process, because he did not have a liberty interest in unrestricted telephone use."); *Koenck v. Bolar*, No. 4:23-CV-00947, 2023 WL 4461090, at *2 (N.D. Ohio June 1, 2023). Nor does Plaintiff have a liberty interest in the denial of personal tablet privileges. *Perry v. May*, No. 3:22 CV 688, 2024 WL 4336364, at *14 (N.D. Ohio Sept. 27, 2024) (*citing Jarrett v. Greene*, No. 1:22-CV-456, 2022 WL 13795466, at *12 (S.D. Ohio Oct. 24, 2022), *report and recommendation adopted*, 2022 WL 17253595 (S.D. Ohio Nov. 28, 2022). Therefore, Plaintiff's due process claims related to the loss of phone/tablet privileges are properly dismissed.

## 2.    Improper Seizure of Property

Plaintiff alleges that Defendant Elkins stole his JP-6 tablet, cord, adapter, and earbuds, as well as his personal fan, bowls, thermos/tumbler sets, nail clippers, and ink pens. (ECF No. 1, PageID.6.) Plaintiff alleges that he also lost over $100 worth of store goods for his "prisoner run store" where he "barters store goods at a price of return of 1½." (*Id.*, PageID.8.) Plaintiff states that Defendant Elkins never submitted a contraband removal record and had no right to dispose of his property. (*Id.*, PageID.10.)

Plaintiff's due process claim related to the loss of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real,

is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's Fourteenth Amendment due process claim regarding the loss of his personal property will be dismissed.

### D. Retaliation Claims

Plaintiff claims that Defendants Picotte, Elkins, Gulder, and Clark retaliated against him because he pursued a grievance against Defendant Picotte. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial

17

or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing at least one grievance. Therefore, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff engaged in protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

### 1.    Defendant Picotte

Plaintiff alleges that after he informed Defendant Picotte that he would be filing a grievance on him for failing to conduct rounds every 30 minutes, Defendant Picotte deliberately conducted his next round nearly 16 minutes late, at which point Plaintiff also had to defecate. (ECF No. 1, PageID.3.) Plaintiff asked Defendant Picotte for a grievance form and Defendant Picotte refused and fabricated a class I misconduct on Plaintiff for threatening behavior, which led to Plaintiff

being placed in segregation. (*Id.*, PageID.3–4.) The Court concludes that at this point in the litigation, Plaintiff has stated sufficient facts to support a retaliation claim against Defendant Picotte.

### 2.    Defendant Clark

Plaintiff states that, after he was found not guilty of the misconduct written by Defendant Picotte, he spoke to Defendant Clark and explained that he should be released from segregation. However, Defendant Clark refused, saying that Defendant Picotte wanted Plaintiff in segregation, and he was going to keep Plaintiff there. (ECF No. 1, PageID.4.) Plaintiff states that he was wrongfully held in segregation from June 30, 2024, until July 19, 2024. (*Id.*, PageID.7.) Although Plaintiff's assertion that Defendant Clark was motivated by a desire to retaliate against Plaintiff is largely conclusory, at this point in the litigation, Defendant Clark's statement is sufficient to support a retaliation claim.

### 3.    Defendant Elkins

Plaintiff asserts that Defendant Elkins "was upset at [him] when she realized that [he] was grieving Picotte for denying [him] the basic human necessity in which all humans must indulge." (ECF No. 1, PageID.6.) Plaintiff states that Defendant Elkins then went to his cell and stole his property. (*Id.*) The Court notes that the theft of personal property is undoubtedly adverse, however, Plaintiff's claim that Defendant Elkins was motivated by a desire to retaliate against him is entirely conclusory.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Other than baldly asserting that Defendant Corrections Officers were friends and/or colleagues, Plaintiff fails to allege any facts in support of his claim that Defendant Elkins knew about his grievance against Defendant Picotte and acted in retaliation of that fact. Notably, although Plaintiff apparently believes that Picotte "was upset at [him] when she realized that [he] was grieving Picotte . . .," Plaintiff does not attribute any statements about this to Picotte. Instead, Plaintiff merely alleges the ultimate fact of retaliation in this action. Accordingly, his speculative allegation against Defendant Elkins fails to state a retaliation claim.

### 4.   Defendant Gulder

Plaintiff alleges that on August 2, 2024, Defendant Gulder threatened to write a disobeying a direct order misconduct on Plaintiff if he did not hang up the phone. (ECF No. 1, PageID.8.) Plaintiff alleges that Defendant Gulder went on to write the misconduct as well as a notice of intent (NOI) for phone restriction, which resulted in Plaintiff's phone being deactivated from August 11, 2024, until September 10, 2024. (*Id.*, PageID.9.) Plaintiff attaches a copy of the misconduct hearing report to his complaint, which shows that he was found not guilty of the misconduct, while the attached copy of the hearing report related to the NOI shows that Plaintiff was nonetheless subjected to a phone restriction. (ECF No. 1-1, PageID.32.)

Although Plaintiff asserts that Defendant Gulder was a colleague and/or friend of Defendant Picotte, other than that conclusory allegation, Plaintiff fails to allege any facts showing that Defendant Gulder's conduct was motivated by a desire to retaliate against Plaintiff for pursuing a grievance on Defendant Picotte. Therefore, as with Defendant Elkins, Plaintiff's speculative allegation against Defendant Elkins fails to state a retaliation claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* in this action. Having conducted the review required by the PLRA, the Court determines that Defendants Elkins, Gulder, and Corrigan will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment and due process claims against remaining Defendants Picotte and Clark. Plaintiff's First Amendment retaliation claims against Defendants Picotte and Clark remain in the case.

An order consistent with this opinion will be entered.

Dated:   March 27, 2025                    /s/ Sally J. Berens
                                           SALLY J. BERENS
                                           United States Magistrate Judge